IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ALABAMA
SOUTHERN DIVISION

| | |
|---|---|
| ROMAN DERICK KING, | ) |
| | ) |
| Plaintiff, | ) |
| | ) |
| v. | ) CIVIL ACTION NO. 04-PWG-0340-S |
| | ) |
| JOHN POTTER, POST MASTER GENERAL, | ) |
| UNITED STATES POSTAL SERVICE, | ) |
| | ) |
| Defendant. | ) |

MEMORANDUM OF DECISION

Roman King, plaintiff, initiated this action against the United States Postal Service alleging race and gender discrimination, racial harassment, and retaliation in violation of § 1981 and Title VII. This court has jurisdiction pursuant to 28 U.S.C. § 1331, federal question, and 28 U.S.C. § 1343(3) and (4), civil rights. The parties have consented to the jurisdiction of the magistrate judge pursuant to 28 U.S.C. § 636(c) and LR 73.2. This matter is before the court on defendant's motion for summary judgment (doc. # 16).

Summary judgment is appropriate only if there are no genuine issues of material fact and the movant is entitled to judgment as a matter of law. Rule 56, *Federal Rules of Civil Procedure*. In making that assessment, the court must view the evidence in a light most favorable to the non-moving party and must draw all reasonable inferences against the moving party. *Celotex Corp. v. Catrett*, 477 U.S. 317 (1986). The burden of proof is upon the moving party to establish his *prima facie* entitlement to summary judgment by showing the absence of genuine issues and that he is due to prevail as a matter of law. *See Clark v. Coats & Clark, Inc.*, 929 F.2d 604 (11th Cir. 1991). Once that initial burden has been carried, however, the non-moving party may not merely rest upon his

pleading, but must come forward with evidence supporting each essential element of his claim. *See Celotex Corp. v. Catrett*, 477 U.S. 317 (1986); *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242 (1986); *Barfield v. Brierton*, 883 F.2d 923 (11th Cir. 1989). Unless the plaintiff, who carries the ultimate burden of proving his action, is able to show some evidence with respect to each element of his claim, all other issues of fact become immaterial and the moving party is entitled to judgment as a matter of law. *See Celotex Corp. v. Catrett*, 477 U.S. 317 (1986); *Bennett v. Parker*, 898 F.2d 1530 (11th Cir. 1990). As the Eleventh Circuit has explained:

> Facts in dispute cease to be "material" facts when the plaintiff fails to establish a prima facie case. "In such a situation, there can be `no genuine issue as to any material fact,' since a complete failure of proof concerning an essential element of the non-moving party's case necessarily renders all other facts immaterial." [Citation omitted]. Thus, under such circumstances, the public official is entitled to judgment as a matter of law, because the plaintiff has failed to carry the burden of proof. This rule facilitates the dismissal of factually unsupported claims prior to trial.

898 F.2d at 1532.

The following facts are undisputed or, if disputed, viewed in the light most favorable to King, the nonmoving party. King, a black male, has been employed with the Postal Service since February 1997. Prior to the incident which gave rise to this suit, King was fired from the Social Security Administration for insubordination. Also, prior to the incident before this court, King had been disciplined for insubordination by both Postal Service Supervisor Dorothy Owens, a black female, and Postal Service Supervisor Art Hill, a black male. Davis Steele, a black male, was one of King's supervisors and had in April 2002 counseled plaintiff "about his bad attitude and intimidating comments that I heard him make to me." (DEX 2). Bobby Romanger, a white male, was Steele's

supervisor and responsible for concurring in any request made by Steele for disciplinary action against King.

King's claim of race and gender discrimination is based on a suspension notice entitled "Emergency Placement in an Off duty Status" that Steele issued to him on July 30, 2002. The notice was issued following an alleged incident in a stairwell on July 20, 2002 during which Steele claimed that King: rammed his shoulder into Steele's chest and midsection, laughed, told Steele "you make me want to fuck you up," punched his fist toward Steele's face, threatened to "kick his ass," and stated "I'm going to get you." Steele told his supervisor, Bobby Romanger, about the alleged assault and Romanger approved Steele's request to suspend King. King disputes Steele's version of what occurred on July 20, 2002 but does not dispute that Steele informed Romanger of his [Steele's] version of what occurred. In deposition, King admitted that he and Steele are both black and that he had no factual basis to believe Steele would discriminate against him based on race. King testified that he believed he was discriminated against by Romanger, Steele's white supervisor, because Sandra Collier, a white female, threw her badge at Steele and was not suspended. According to Steele's affidavit, Steele "did not feel that the situation with Mrs. Collier was life threatening" as he did by the situation involving King. According to Romanger's affidavit, he had "no knowledge of any incident between Mr. Steele and Ms. Collier. I do not know Ms. Collier." King filed an EEO complaint on September 27, 2002 alleging race and sex discrimination regarding the July 30, 2002 suspension decision. On November 20, 2003, a final agency decision was issued finding that King had not been discriminated against.

Title VII of the Civil Rights Act of 1964 makes it "an unlawful employment practice for an employer…to discriminate against any individual with respect to his compensation, terms,

conditions, or privileges of employment, because of such individual's race, color, religion, sex, or national origin." 42 U.S.C. § 2000(e)-2(a)(1). 42 U.S.C. § 1981(a) provides:

> All persons within the jurisdiction of the United States shall have the same right in every State and Territory to make and enforce contracts, to sue, be parties, give evidence, and to the full and equal benefit of all laws and proceedings for the security of persons and property as is enjoyed by white citizens, and shall be subject to like punishment, pains, penalties, taxes, licenses, and exactions of every kind, and to no other.

Title VII and § 1981 claims are analyzed in the same manner. *Standard v. A.B.E.L. Services, Inc.*, 161 F.3d 1318, 1330 (11th Cir. 1998).

Mr. King seeks to prove his case with circumstantial evidence which invokes the familiar burdenshifting analysis established in *McDonnell Douglas Corp. v. Green*, 411 U.S. 792, 802-04 (1973). Under this framework, King has the initial burden of establishing a *prima facie* case of discrimination. *Texas Dept. Of Community Affairs v. Burdine*, 450 U.S. 248, 252-53 (1981); *Combs v. Plantation Patterns*, 106 F.3d 1519 (11th Cir. 1997), *cert. denied,* 522 U.S. 1045 (1998). If he proves a *prima facie* case of discrimination, the burden shifts to defendant to rebut the presumption of discrimination by producing evidence of a legitimate, nondiscriminatory reason for its action; however, "the defendant need not persuade the court that it was actually motivated by the proffered reasons." *Burdine*, 450 U.S. at 254. Defendant's burden is "exceedingly light" *Meeks v. Computer Associates, Int'l*, 15 F.3d 1013, 1019 (11th Cir. 1994). If the defendant carries this burden, the presumption of discrimination created by the *prima facie* case "drops from the case" and "the factual inquiry proceeds to a new level of specificity." *Burdine*, 450 U.S. at 255, n. 10. The burden then shifts to the plaintiff to present sufficient evidence, including evidence produced in support of the *prima facie* case "sufficient to permit a reasonable fact finder to conclude that the reasons given by

the employer were not the real reasons for the adverse employment decision," but were merely pretext for intentional discrimination. *Combs*, 106 F.3d at 1528 (citing *Burdine*, 450 U.S. at 256, *McDonnell Douglas*, 411 U.S. at 804). "The ultimate burden of persuading the trier of fact that the defendant intentionally discriminated against the plaintiff remains at all times with the plaintiff. " *Reeves v. Sanderson Plumbing Products, Inc.*, 530 U.S. 133, 143 (2000).

To establish a *prima facie* case of race discrimination, Plaintiff must show:

> (1) he belongs to a racial minority; (2) he was subjected to adverse job action; (3) his employer treated similarly situated employees outside his classification more favorably; and (4) he was qualified to do the job.

*Holifield v. Reno*, 115 F.3d 1555, 1562 (11th Cir. 1997). See also, *Crapp v. City of Miami Beach*, 242 F.3d 1017, 1020 (11th Cir. 2001). Defendant argues that King has failed to establish that similarly situated employees were treated more favorably than he.

> "In determining whether employees are similarly situated for purposes of establishing a *prima facie* case, it is necessary to consider whether the employees are involved in or accused of the same or similar conduct and are disciplined in different ways." *Jones v. Bessemer Carraway Med. Ctr.,* 137 F.3d 1306, 1311 (11th Cir.) (quoting *Holifield v. Reno*, 115 F.3d 1555, 1562 (11th Cir. 1997)), *opinion modified by* 151 F.3d 1321 (11th Cir. 1998). "The most important factors in the disciplinary context ... are the nature of the offenses committed and the nature of the punishments imposed." *Id*. (citations and quotations omitted). In order to satisfy the similar offenses prong, the comparator's misconduct must be nearly identical to the plaintiff's in order "to prevent courts from second-guessing employers' reasonable decisions and confusing apples with oranges." *See Maniccia v. Brown*, 171 F.3d 1364, 1368-69 (11th Cir. 1999) (citation omitted); *see also Dartmouth Review v. Dartmouth College*, 889 F.2d 13, 19 (1st Cir. 1989) ("Exact correlation is neither likely nor necessary, but the cases must be fair congeners. In other words, apples should be compared to apples.").

*Silvera v. Orange County School Bd.*, 244 F.3d 1253, 1259 (11th Cir. 2001), *cert. denied,* 534 U.S. 976 (2001).

King identifies Sandra Collier, a white female, as an employee similarly situated and treated more favorably. Defendant argues that Collier and King were not similarly situated because they did not engage in substantially similar acts of misconduct. In deposition, King complained that Collier once threw her badge at Steele but was not suspended.

In the opposition to defendant's motion for summary judgment, King argues that Collier's actions occurred in front of witnesses and she was not investigated under the Postal Service's "Zero Tolerance Policy" because neither Steele nor the other witnesses reported the Collier incident despite the Zero Tolerance Policy. The court is unable to locate any testimony which establishes that there were witnesses to the Collier incident. In deposition, King made no mention of unequal treatment under the Postal Service's "Zero Tolerance Policy" although he was aware that it was management's position during the grievance procedure that "As this issue involved allegations of workplace violence, Management must comply with the Postal Service's Zero Tolerance policy in this regard, and thoroughly investigate each incident." (Plaintiff's exhibits B and C). King has not provided the court with a copy of the Postal Service's Zero Tolerance Policy. The only explanation of the zero tolerance policy is arguably found in the "Grievance Summary – Step 1" (plaintiff's exhibit F). Under reasons for decision, Steele wrote:

> The grievance is not timely. The USPS has zero tolerance policy that has to be [i]nforced. Never should an employee display acts of violen[c]e and intimidation. And never should he or she put their hands on an employee in an aggressive manner.

(Plaintiff's Exhibit F).

Under the section setting out management's position, Steele wrote:

> Management has the right to manage and perform his or her duties without the fear of violence or intimidation by [] an employee. Management also feels that the employee was insubordinate and in violation of the USPS zero tolerance policy. It is the position of management that the employee be removed from service because of his t[h]reatening comments, acts of violen[c]e, and int[i]midating behaviors. This type of behavior is neither suitable nor conducive to the USPS work environment.

(Plaintiff's exhibit F).

According to Steele's affidavit, Steele "did not feel that the situation with Mrs. Collier was life threatening." Further, her actions did not include placing her hands on Steele in an aggressive manner. While Collier's act of throwing her badge at Steele may have been offensive, it is not an act of violence or intimidation as was King's alleged pushing of Steele, punching gesture and threatening language. After consideration of what little evidence is before the court with respect to the zero tolerance policy, the court concludes that Collier's action did not violate that policy. Moreover, the acts of alleged misconduct of King and Collier differ sufficiently in the severity of the threatening nature that they cannot be considered as similar for comparator purposes. King cannot establish a *prima facie* case of race and gender discrimination.

While King denies the above incident occurred, he does not dispute that Steele told Romanger about the incident. When faced with conflicting versions of the stairwell incident, Romanger could choose to accept Steele's version and reject King's version "as long as the choice is an honest choice." *EEOC v. Total System Services, Inc.*, 221 F.3d 1171, 1176 (11th Cir. 2000). King could therefore not demonstrate pretext even if the court assumed he had established a *prima facie* case and looked behind the legitimate nondiscriminatory reason for the suspension.

7

King further argues in his opposition that has been harassed and subjected to retaliation since the July 20, 2002 incident as evidenced by his "numerous" (actually only four), subsequent EEO charges. (Doc. # 25, p. 2; plaintiff's exhibit E). The court will not consider the alleged harassment and retaliation claims or the alleged accommodations claim for King's disability of Post Traumatic Stress Syndrome. In a separate order entered contemporaneously with this memorandum of decision and judgment, the court denied as untimely King's motion for leave to amend to incorporate his subsequent EEO charges into this lawsuit. King alleged in his July 9, 2004 amended complaint that "Plaintiff was diagnosed with PTSD and put on limited duty disabled status and had to have his position changed on his doctor's order due to aggravation of his condition by constant harassment of supervisor Davis Steele." In the opposition to motion for summary judgment, King argues that Steele discriminated against him based on his post traumatic stress syndrome when Steele spoke to other managers about King. (Doc. # 25, pp. 2-3 and plaintiff's exhibit A). In his March 25, 2005, deposition, King states that he was diagnosed with "posttraumatic stress disorder from the Gulf War" while he was on suspension following the July 2002 incident. King's testimony contradicts his argument that his PSTD was caused by Steele or that Steele was aware of his disorder when he spoke to the managers about King. In any event, in his deposition, King was asked whether his "complaint involve[d] any issues other than the July 20, 2002 suspension and your claim of race and gender discrimination against Mr. Romanger based on that discrimination." (DEX1, p. 59). A fair reading of his testimony and the statements of his lawyer indicate that the only issues in the suit at the time of the deposition were the issues raised in the EEO charge which preceded this action. (DEX1, pp. 48, 59-64; DEX 12).

Based on the foregoing, defendant's Motion for Summary Judgment (doc. #16) is due to be GRANTED. A separate final judgment consistent with this Memorandum of Opinion will be entered simultaneously herewith.

As to the foregoing it is SO ORDERED this the 24th day of March, 2006.

_____
PAUL W. GREENE
CHIEF MAGISTRATE JUDGE